IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BILLY N. HAMMOCK,<br><br>              Plaintiff<br><br>VS.<br><br>VICTOR WALKER, WARDEN, *et al*.,<br><br>              Defendants | NO. 5:01-CV-389 (WDO)<br><br>PROCEEDINGS UNDER 42 U.S.C. § 1983<br>BEFORE THE U. S. MAGISTRATE JUDGE |

# RECOMMENDATION

Plaintiff BILLY N. HAMMOCK is an inmate in the custody of the state of Georgia. He has sued defendants VICTOR WALKER, WARDEN, MR. FRAZIER, D. FURLOW, MR. FOX, MR. DEMMUNDO, JOHN DOE, JOHN HILL, MR. RAWLS, MS. RUFF, MS. CARTER, MS. DOTSON, MR. GREENE, MS. BARNETT, MS. JIMENEZ, and MR. WYCHE [1] alleging that the defendants violated his constitutional rights while he was incarcerated at Macon State Prison in Oglethorpe, Georgia. Plaintiff raises various claims in his complaint. Specifically, he claims that he was subjected to a beating by defendants Frazier, Furlow, Fox, Demmundo, and Doe on July 10, 2001, after he complained about receiving a haircut, that defendants Hill and Ruff refused to allow him to call his attorney and that defendant Rawls took a letter plaintiff received from his attorney and never returned it, that defendants Carter, Dotson, Greene, and Barnett withheld his outgoing mail and opened a legal document from the ACLU addressed to the plaintiff, and that defendant Jimenez was deliberately indifferent to his serious medical needs.

Before the court is the defendants' **MOTION FOR SUMMARY JUDGMENT**. Tab #91. The motion is supported by a brief, affidavits, various documents, and deposition. The plaintiff has filed a response to the defendants' motion.[2] Tabs #109-113. In entering this recommendation, the undersigned has carefully considered the defendants' motion and all attachments thereto, as well as the plaintiff's response.

---

[1] Various other claims and defendants were dismissed from the present suit on March 28, 2002. Tab #36. Further, plaintiff has stated no claims against defendants Wyche and Walker. Accordingly, IT IS RECOMMENDED that they be **DISMISSED** from the present suit.

[2] The plaintiff was never advised by court order, as required by the Eleventh Circuit, of his duty to respond to the defendants' motion. However, the District Judge did advise plaintiff by letter that he must respond to the defendants' motion.

## LEGAL STANDARDS
### A. Summary Judgment

Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

> The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c); Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See Van T. Junkins & Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. *Hairston v. The Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[3]

### DISCUSSION
1. **Excessive Force**

The Eleventh Circuit has noted that to establish an Eighth Amendment violation a prisoner must prove that his injury was caused by an unnecessary and wanton infliction of pain. In such cases the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Absence of serious injury alone is insufficient to dismiss a prisoner's Eighth Amendment claim. *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).[4]

The plaintiff and defendants have provided somewhat different accounts of the incident in question. The defendants admit to using force on plaintiff on July 10, 2001, in order to subdue him. However, they argue that said force was necessary because of plaintiff's disruptive and threatening behavior.

The plaintiff provides a slightly different account of the events that took place upon his arrival at Macon State Prison ( MSP) on July 10, 2004. He claims that he did nothing to warrant the defendants use of force. Plaintiff states that on that date, he was one of several inmates being transferred to MSP from Calhoun State Prison. Under MSP policy, recent transferees are required to be processed before they can be housed. Processing includes a haircut if the inmate's hair is long enough. After plaintiff was ordered to sit in the chair to receive a haircut, an altercation broke out with the defendants when plaintiff stated that he did not think that he needed a haircut. As a result of the use of force, plaintiff sustained a cut above his eye and back injuries.

---

[3] *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (the purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial); *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 (11th Cir. 1988) (the question is whether the record as a whole could lead a rational trier of fact to find for the non-movant).

[4] Analysis of an Eighth Amendment excessive force claim is contextual and requires that many factors be considered: the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible official, and any efforts made to temper the severity of a forceful response. Only *de minimis* uses of force are beyond constitutional recognition. *Id.*

3

The Supreme Court has noted that prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve the internal order and discipline and to maintain institutional security. The Court has noted that this deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline.

While this deference does not insulate from review actions taken in bad faith and for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. *Whitley v. Albers*, 475 U.S. 312, 322 (1986). Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard described, the case should not go to the jury. *Id*.

In the use of force report, plaintiff admits that he forcibly argued with the defendants and that his hands were not restrained during the argument.[5] *See* Tab #95.  It is obvious that the defendants use of force was in response to this resistance. In the undersigned's view, this is essentially a dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. In short, given the deference that is due jail officials, the evidence, viewed in the light most favorable to the plaintiff, does not support "a reliable inference of wantonness in the infliction of pain."[6] Therefore, the defendants are entitled to summary judgment on this claim.

---

[5]In documents submitted in response to the defendants' Motion For Summary Judgment, plaintiff claims that his arms were handcuffed during the entire incident.

[6]Although plaintiff did receive a cut on his head due to the defendants use of force, said injury is *de minimis* as it occurred in an attempt to get plaintiff to comply with getting his hair cut. There is no medical evidence that plaintiff sustained any other type of injury on July 10, 2001.

4

## 2. Access To Courts

In his complaint, plaintiff claims that defendants Hill and Ruff refused to allow him to make a call to his attorney Jerry M. Daniel. He also states that defendant Hill would not put attorney Daniel on his call list. Additionally, plaintiff claims that Rawls took a letter that plaintiff had received from his attorney and never returned it. Finally, plaintiff claims that defendants Carter, Dotson, Greene, and Barnett withheld his outgoing mail and that they opened mail addressed to the plaintiff from the ACLU.

Prisoners have a constitutional right to a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977) (noting, however, that prisoners need only be given a reasonably adequate opportunity of access, and not perfect access, to the courts; meaningful access to the courts is the touchstone). However, in order to properly raise a claim for denial of access to the courts, the plaintiff must show that he suffered an actual injury in his ability to present a non-frivolous claim to the court. *Lewis v. Casey*, 518 U.S. 343, 352-353 (1996). In other words, *Bounds* requires that inmates be provided with the tools necessary to attack their sentences and conditions of confinement. Any other litigating impairment is merely incidental to confinement and perfectly constitutional. *Id*. at 355.

Even assuming that plaintiff's legal mail from the ACLU was opened, his allegations of denial of access to the courts do not state a claim for relief under §1983. As noted above, *Bounds* only requires that inmates be provided with the tools necessary to attack their sentences and conditions of confinement. Plaintiff does not claim that the opening of the ACLU mail prevented him from doing this.[7]

---

[7] Plaintiff also claims that the defendants withheld his outgoing mail. However, he has no evidence to support his allegations. Therefore, IT IS RECOMMENDED that this claim be **DISMISSED**.

In regards to plaintiff's claims concerning attorney Jerry Daniel, the defendants admit that all inmates have a call list. However, pursuant to prison policy, prior to an calling an attorney, the inmate's counselor confirms that said individual actually represents the inmate. In the present case, attorney Daniel stated that he did not wish to speak to plaintiff. Therefore, he was not placed on plaintiff's call list. Although attorney Daniel was not placed on plaintiff's call list, plaintiff still attempted to contact attorney Daniel by placing over 35 collect calls to attorney Daniel's office. Each time the call was refused. *See* Tab #98.

Lastly, plaintiff claims that defendant Rawls confiscated a letter from his attorney. However, he admits that the letter was returned to him at a late date. Tab #102 at 52-53.

Base on the above, the defendants are entitled to summary judgment on plaintiff's denial of access to the court claims.

### 3. Deliberate Indifference

Plaintiff claims that defendant Ms. Jimenez was deliberately indifferent to his serious medical needs because she stopped his prescription for Valium which caused him needless suffering.

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251, rehearing denied 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1976). However, the course of treatment is "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107.[8] A mere disagreement between a prisoner and prison officials as to diagnosis or treatment does not give rise to a constitutional violation. *Id*. at 106.

---

[8]At most, a mere allegation of improper or untimely treatment, without more, states a claim of medical malpractice cognizable under state law. *Id. See also Howell v. Evans*, 922 F.2d 712, 719 (11th Cir. 1991) (vacated pursuant to settlement, 931 F.2d 711 (11th Cir. 1991), reinstated by unpublished order (June 24, 1991), cited in *Howell v. Burden*, 12 F.3d 190, 191 n.* (11th Cir. 1994)). Moreover, *Estelle* specifically states that the question of whether an x-ray or additional diagnostic techniques or forms of treatment are indicated are classic examples of matters for medical judgment and that medical malpractice does not become a constitutional violation merely because the patient is a prisoner. 97 S.Ct. at 292-93.

Delay in access to medical attention can violate the Eighth Amendment when it is tantamount to unnecessary and wanton infliction of pain. Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to lay persons because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not violate the Eighth Amendment. The seriousness of an inmate's medical needs may be decided by reference to the effect of the delay in treatment.

Where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious. An inmate who complains that delay in medical treatment rose to a constitutional violation must place <u>verifying medical evidence in the record</u> to establish the detrimental effect of delay in medical treatment to succeed. Further, the tolerable length of the delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay. *Hill v. Dekalb R.Y.D.C.*, 40 F.3d 1176, (11th Cir.1994) (emphasis added).

In support of their motion for summary judgment, the defendants have submitted the plaintiff's deposition, medical records, and the affidavit of defendant Jimenez. The deposition, records, and affidavit indicate that defendant Jimenez was not deliberately indifferent to plaintiff's serious medical needs.

Defendant Jimenez states that she had a meeting with plaintiff sometime around May of 2001. At this meeting, plaintiff asked her to put in a stop order for his seizure medications. At the time, plaintiff was on various medications including Valium which is occasionally prescribed to treat seizures. Tab #97.

Defendant Jimenez avers that inmates who are receiving Valium for mental health reasons are typically seen by a psychiatrist. Plaintiff was not being seen by a psychiatrist, so she thought the Valium was being prescribed for his seizures. Therefore, she believed plaintiff's Valium should be stopped with his other seizure medications. *Id*.

Dr. Ayers reviewed defendant Jimenez's stop medication order and signed off on it. This included the order to stop plaintiff's Valium.

In response to the defendants' motion, the plaintiff has submitted nothing of substance to adequately rebut the defendants showing that he was provided with constitutionally adequate medical care. Significantly, plaintiff has failed to submit any medical evidence in support of his contention that discontinuing his prescription for Valium fell below applicable medical standards and constitutionally adequate standards of care. He simply disagrees with defendant Jimenez's treatment.

In the court's view, plaintiff HAMMOCK has failed to establish defendant Jimenez's deliberate indifference to his medical needs, serious or otherwise. He has submitted no medical evidence to support his contention that the defendant was deliberately indifferent to his medical needs by taking him off Valium.

Accordingly, IT IS RECOMMENDED that the defendants' MOTION FOR SUMMARY JUDGMENT (Tab #91) be **GRANTED**. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned, **WITHIN TEN (10) DAYS** after being served with a copy thereof.

SO RECOMMENDED, this 15th day of APRIL, 2005.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE